The lessor of the plaintiff read in evidence a grant to himself, dated in the year 1812, and proved that A was the beginning corner of his grant, and was a known and established corner of the Gad tract. His grant then ran to R, S, Y, C, B, and back to A.
The defendant then read in evidence a grant to Gad, under whom he claimed, which commenced at O, then to A, Q, P. This was the oldest of any of the grants. He also read in evidence a grant to Lipscomb, which commenced at T, then to S, W, U, as the defendant (474) contended, but to S, X, V, as the plaintiff contended, and back to T, with the river. This was the next oldest grant. He then read in evidence a grant to Harrington, which commenced at G, then to K, L, D, E, F, as the defendant contended, but to K, L, Y, Z, F, as the plaintiff contended, and then back to G. This grant was the third in age. *Page 373 
The defendant then read in evidence a grant to Love, under whom he also deduced title, which commenced at G, then to J, I, and to a point on the river, about five steps from G, then on to H, 1, U, W, 2, A, N, C, D, E, F, as the plaintiff contended; but to 1, V, X, 2, A, N, C, Y, Z, F, as the plaintiff contended, and back to G. Another view taken by the plaintiff was that when you got to 1 you then went to T and then never got back to A, Gad's corner, at all; and so the grant never closed, and of course covered no land.
[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 20 N.C. 373.]
The calls in the Love grant, necessary to explain this part of (475) the case, were from a stake in the river at H, thence N. 72 degrees W. until it strikes the river bank (which would be at 1), then with the river, as it meanders opposite to Lipscomb's corner standing on the river bank, then with Lipscomb's line, the reverse, N. 30 degrees, E. 27 chains to his third corner, then with said Lipscomb's 2d line, the reverse, N. 60 degrees, W. 12 chains to Gad's corner standing on said line, then with Gad's line N. 20 degrees, *Page 374 
E. 50 chains to a Spanish oak in said line, then, etc. This Spanish oak corner was found at N, and was established as the corner of the Love grant. The grant to Love was the fourth in age, but was many years older than the grant to the lessor of the plaintiff.
It was also in evidence that in the year 1824 the lessor of the plaintiff had contracted to sell the land covered by his grant, to the defendant; that the defendant was, at that time, and had been for some years, in the possession of the house and part of the field sued for, claiming the land as his own under the grant to Love. He also owned the Gad tract and the land adjoining. After this parol contract the defendant extended his field to its present limits. Some years afterwards, and but a short time before the date of the demise, the lessor of the plaintiff called on the defendant to complete the contract, when the defendant insisted that the land covered by the plaintiff's grant was not vacant, but belonged to the defendant before the grant to the lessor of the plaintiff issued, and that their contract was that he was to buy the lessor of the plaintiff's right, in the event only of its appearing that he had a good title, and he was now satisfied that he, the plaintiff's lessor, had no right. The lessor of the plaintiff then demanded the possession, and the defendant refused to give it.
The lessor of the plaintiff contended, first, that the defendant was estopped by his agreement to purchase of him, and by extending his field after said agreement, to deny his right to the possession.
 Secondly, that the Love grant did not cover the land in dispute, because:
(476) 1. The space between the points G, H, and 1, being parts of the Pedee River, was not subject to entry, and so the two parts of the land granted to Love could not be connected, and the grant was, therefore, void.
2. That if the Lipscomb grant ran from S to X, V, and the Harrington grant from L to Y, Z, F, and the Love grant from 1 to V, X, 2, A, then the two parts of the land granted to Love would be perfectly detached, and, in getting from one to the other, you must necessarily cross the established lines of older grants, and therefore the grant was void.
3. That the call of Love's grant from 1, being with the river as it meanders, etc., may be either up or down, and there is nothing to determine whether it shall go to the beginning corner of the Lipscomb tract at T, or to the point U, or V; and if it goes to T it cannot cover the land in dispute.
His Honor charged, upon the 1st point, that if the defendant was in possession of the house and part of the field at the time of the *Page 375 
agreement, claiming under the grant to Love, his possession of a part was, in law, a possession of the whole; and, being in possession of the whole at the time of the agreement to purchase the principle contended for by the plaintiff's counsel did not apply, even as to that part of the field taken in after the agreement.
Upon the 2nd point his Honor charged, first, that if that part of the Pedee River covered by Love's grant was not subject to entry the grant was void only as to that part, but valid as to the residue. Secondly, that, supposing the grants to be located as contended for by the plaintiff, and the land covered by the grant to Love to be detached and cut into two parts, by the lines of older grants, still the grant would be valid, except so far only as it interfered with the older grants. Thirdly, that if the jury were satisfied that the corner of the Gad tract, at A, was the corner called for in the Love grant, then they must go to A; and it made no difference whether from 1 they went to T, and then around to A, or, whether from 1 they went to U, W, 2, A, or to V, X, 2, A; for, in either way, after getting to A then the next call, which it was admitted would go to N, an established corner, and so around, would take in the land in dispute.
There was a verdict and judgment for the defendant, and the (477) lessor of the plaintiff appealed.
We entirely approve of the instructions given to the jury. Upon the point first raised we take it to be clear that the defendant, not having entered into possession under the plaintiff's lessor, nor shown to hold under him, could not be regarded as his tenant, and was at full liberty to controvert his title. An offer to buy a claim to land, which one holds as his own, may be made for the sake of peace, through alarm, or from misapprehension; and, so far from being conclusive of the title is very slender, if any, evidence thereof.
The question involved in the first and second points of the second exception raised is substantially the same. From our earliest recollections of the law we have understood it to be settled that if a grant covers, in part, land not liable to entry, or which has been previously granted, it will be good for the land comprehended in it, which had not been granted, and was liable to entry.
The view presented by his Honor on the remaining question, the location of Love's grant, is satisfactory and conclusive. He might, indeed, *Page 376 
have pointed out (but it was unnecessary) other very strong indications in favor of the location claimed by the defendant, and inconsistent with the location in part attempted by the plaintiff. The difference begins at the point 1. From thence the call of the grant is "with the river, as it meanders opposite to Lipscomb's corner, standing on the river bank." Lipscomb has two corners on the river bank, the beginning corner and the fourth corner of his tract, and this call of Love's grant leaves it indifferent which of these corners is intended. But the next call removes all ambiguity — it is "with Lipscomb's line reversed to his third corner." Nothing can be more conclusive to show that the corner of Lipscomb, on the river, called for in the preceding line of Love's grant, is Lipscomb's fourth corner. Having arrived, in this way, to Lipscomb's third (478) corner, the next call of the grant is "with said Lipscomb's line reversed, N. 60 degrees W. to Gad's corner." The only difficulty in fulfilling all the requisitions of this call is that running the line described you do not meet Gad's corner, but pass to the south of it, and this difficulty imposes the necessity of either running the required line until a point be reached opposite to Gad's corner, and thence proceeding to that corner, or disregarding the line, and running directly to that corner. But, whichever of these modes be adopted, the corner at A will be reached, and thence the next call is for the established corner at N; and thus an obvious, reasonable and satisfactory construction may be put upon all the calls of the grant, which, according to the plaintiff's attempt at exposition would be made absurd and contradictory, and render a location of the grant impracticable. The judgment is affirmed with costs.
PER CURIAM. Judgment affirmed.
Cited: Tucker v. Satterwhite, 123 N.C. 530. *Page 377 
(479)